JS-6

GROSSMAN & KLARFELD, INC.
Richard A. Grossman, State Bar No. 47938
S. Myron Klarfeld, Esq., State Bar No. 49190
2029 Century Park East
Mail: Twenty-First Floor
Reception: Twenty-Fourth Floor
Los Angeles, California 90067-3007
Telephone: (310) 277-5811
Facsimile: (310) 277-5732

Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

DEC 1 4 2004

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

Attorneys for Plaintiff and Counterdefendant
MICHAEL ZILLES

ENTERED
CLERK, U.S. DISTRICT COURT

DEC 1 5 2004

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
DEC 1 3 2004
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZILLES, an individual, | ) Case No. CV 03-8435 DSF (CWx) |
| Plaintiff, | ) |
| v. | ) **STIPULATION OF SETTLEMENT** |
| | ) **AND ORDER THEREON** |
| MICHAEL SKELLERN; DENNIS | ) |
| COLE; RICK FIELDS; UNIVERSAL | ) |
| GUARDIAN CORPORATION, a | ) |
| corporation; and UNIVERSAL | ) |
| GUARDIAN HOLDINGS, INC., a | ) |
| corporation, | ) |
| Defendants. | ) |
| | ) |
| UNIVERSAL GUARDIAN | ) |
| CORPORATION, a Nevada | ) |
| corporation, | ) |
| | ) |
| Counterclaimant, | ) |
| v. | ) |
| | ) |
| MICHAEL ZILLES, an individual, | ) |
| | ) |
| Counterdefendant. | ) |

87

1    **WHEREAS,** on May 19, 2004, the Parties entered into a Settlement Agreement
2    and Mutual General Release, a true and correct copy of which is attached hereto,
3    marked Exhibit "A" and fully incorporated herein by this reference (the "Settlement
4    Agreement"). The Settlement Agreement provides for, *inter alia*, the payment of Two
5    Hundred Fifty Five Thousand Dollars ($255,000.00) to Plaintiff as well as the issuance
6    of six hundred thousand shares (600,000) of unrestricted, non-legend and freely
7    tradable common stock of Defendant Universal Guardian Holdings, Inc., a Delaware
8    corporation ("UGHO");
9
10    **WHEREAS,** Defendants have paid Plaintiff all monies due under the Settlement
11    Agreement but a dispute has arisen in respect to the issuance of the unrestricted, non-
12    legend and freely tradable UGHO common stock as required under paragraph 2 of the
13    Settlement Agreement;
14
15    **WHEREAS,** on September 22, 2004, Plaintiff filed a Motion to Enforce
16    Settlement and for Attorney Fees and Costs (the "Motion"). In the Motion, Plaintiff
17    contends that Defendants breached the terms of settlement regarding the issuance of the
18    required registered stock thus entitling Plaintiff to recover damages, attorney fees and
19    costs. Defendants opposed the Motion and contend that Plaintiff has breached the
20    terms of settlement. The moving and opposing papers filed by Plaintiff and
21    Defendants, respectively, are a matter of record with the Court;
22
23    **WHEREAS,** the Parties desire to settle all of the issues and claims presented by
24    the Motion as well as consummate the terms of the Settlement Agreement so that this
25    action may be dismissed in its entirety with prejudice, upon full execution and
26    performance of the terms of this Stipulation of Settlement.
27    / / /
28

STIPULATION OF SETTLEMENT AND ORDER THEREON

1

2    **NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by

3    and between Plaintiff, Michael Zilles, and Defendants, Michael Skellern, Dennis Cole,

4    Universal Guardian Corporation, a Nevada corporation and Universal Guardian

5    Holdings, Inc., a Delaware corporation as follows:

6

7    1.    On or before December 8, 2004, Plaintiff will cause the original share

8    Certificate No. 2281 representing six hundred thousand (600,000) shares of UGHO

9    restricted common stock (the "Restricted Stock Certificate") to be delivered to UGHO's

10    transfer agent, Stalt, Inc., located at 848 Tanager Street, Suite N, Incline Village, NV

11    89451.  The Restricted Stock Certificate to be delivered to Stalt, Inc. will be duly

12    endorsed by Plaintiff with an appropriate Medallion signature guarantee.

13    Accompanying the return of the Restricted Stock Certificate as provided in this

14    paragraph 1, Plaintiff shall provide written instructions to Stalt, Inc. in the form

15    attached hereto, marked Exhibit "B", to cancel said certificate and return the six

16    hundred thousand (600,000) shares represented thereunder to UGHO's treasury.

17

18    2.    On or before December 8, 2004, Plaintiff will cause a Rule 144(k) letter in

19    the form attached hereto, marked Exhibit "C" (the "Rule 144(k) Letter") to be delivered

20    to UGHO's transfer agent, Stalt, Inc. located at 848 Tanager Street, Suite N, Incline

21    Village, NV 89451.  The Rule 144(k) Letter to be delivered to Stalt, Inc. will be duly

22    endorsed by Plaintiff with an appropriate Medallion signature guarantee. On or before

23    December 8, 2004, Plaintiff will cause a copy of the Rule 144(k) Letter to be faxed to

24    Defendants' counsel of record in this proceeding as well as UGHO's securities counsel,

25    Richardson & Patel, LLP, at fax number at 310.208.1154, attn. Mark Y. Abdou, Esq.

26

27    3.    On or before December 10, 2004, UGHO will instruct its securities

28    counsel, Richardson & Patel, LLP to issue an opinion letter in the form attached hereto,

marked Exhibit "D". On even date, UGHO shall further instruct Richardson & Patel, LLP to fax a copy of its opinion letter to Stalt, Inc. as well as all counsel of record in this proceeding.

4.     On or before December 14, 2004, UGHO will instruct Stalt, Inc. to issue to Michael J. Zilles on December 20, 2004, a total of six hundred twenty thousand (620,000) shares of UGHO unrestricted common stock without a restrictive legend (the "Unrestricted Stock Certificate") under Rule 144(k), provided Plaintiff has complied with paragraphs 1 and 2 above. UGHO shall further instruct Stalt, Inc. to deliver no later than December 21, 2004, the original Unrestricted Stock Certificate to Plaintiff's counsel of record, Richard A. Grossman, Esq. of the law firm of Grossman & Klarfeld, Inc., located at 2029 Century Park East, 21st Floor, Los Angeles, CA, 90067-3007.

5.     All of the terms and conditions of the Settlement Agreement, including, without limitation, the mutual general release contained at paragraph 3 thereof, shall, upon full and timely performance of all of the terms and conditions of this Stipulation of Settlement and Order Thereon (the "Stipulation"), remain in full force and effect and be binding upon each of the Parties herein and such mutual general release shall extend to and include the alleged breaches of the Settlement Agreement as well as all of the issues and claims relating, directly or indirectly, to the Motion upon timely and full compliance with this Stipulation; provided, however, in any conflict between the terms and condition of this Stipulation and the Settlement Agreement, the terms and conditions of this Stipulation shall control.

6.     Plaintiff shall be entitled to sell or otherwise dispose of all of the shares represented by the Unrestricted Stock Certificate in any number, amount, denomination, in any way, and at any time, without any restrictions whatsoever, in his sole and complete discretion.   Accordingly, paragraphs 2.C and 2.D of the Settlement

- 4 -

STIPULATION OF SETTLEMENT AND ORDER THEREON

1    Agreement is hereby expressly deleted and of no further force or effect.

2

3         7.    The Parties, and each them, warrant and represent that (a) each has the full

4    right, power and authority to enter into and consummate this Stipulation; (b) the

5    execution, consent and/or acknowledgment of no other person or entity is required in

6    order to validate the execution of this Stipulation; (c) that all procedures or proceedings

7    required to be taken to effectuate this Stipulation have been or will be duly undertaken

8    by each Party, respectively, in order to make, deliver and carry out the terms hereof,

9    including, without limitation, the Parties respective obligations under paragraphs 1, 2, 3

10   and 4 above. Each of the Parties further represent and warrant that they will cooperate

11   and will not engage, directly or indirectly, in any act to interfere, frustrate, or delay the

12   timely delivery of the Unrestricted Stock Certificate to Plaintiff as provided for under

13   this Stipulation.

14

15        8.    Plaintiff hereby represents and warrants that he is not presently, and for

16   over the last year has not been, an affiliate of UGHO.    Plaintiff hereby further

17   represents and warrants that after December 19, 2004, he will have held the shares to be

18   represented by the Unrestricted Stock Certificate for a period of two years.

19

20        9.    Each of the Parties agree that this Stipulation shall have the same force and

21   effect as if entered on the record in open court and that this Court shall retain

22   jurisdiction to enforce the terms hereof as well as the Settlement Agreement.

23

24        10.    This action shall be dismissed in its entirety with prejudice within five (5)

25   court days of the timely delivery of the required unrestricted stock to Plaintiff's counsel

26   as provided herein. If the unrestricted stock has not been delivered by December 21,

27   2004, Plaintiff's counsel shall provide Defendants' counsel and the Court with written

28   notice of such default and shall be entitled to file a motion to enforce the terms of this

1  Stipulation.

2

3      11.    Each of the Parties shall bear their own costs and attorneys fees in

4  connection with this action including, without limitation, the Settlement Agreement, the

5  Motion and/or this Stipulation, provided, however, in the event of any claim or action

6  to enforce the terms of the Settlement Agreement and/or this Stipulation, the prevailing

7  party shall be entitled to recover from the other party, in addition to damages or

8  injunctive relief, if any, any and all fees and costs reasonably incurred, including expert

9  witness fees, witness fees, deposition costs, copying charges and other expenses as

10  otherwise allowed by law.

11

12  _____          _____
   Michael Zilles                    Michael Skellern

13

14  _____
15  Dennis Cole

16

   Universal Guardian Corporation    Universal Guardian Holdings, Inc.

17

18

19  By:_____        By:_____

20      Michael Skellern,                 Michael Skellern,
       President & CEO                   President & CEO

21

22

23  **APPROVED AS TO FORM AND CONTENT:**

24  GROSSMAN & KLARFELD, INC.          MARK V. ASDOURIAN, P.C.

25

26  By:_____         By:_____

27      Richard A. Grossman, Esq.,        Mark V. Asdourian, Esq.
       Attorneys for Plaintiff           Attorney for Defendants

28

## ORDER

Based upon the foregoing Stipulation entered into among the Parties to this action and good cause appearing, the terms of this Stipulation are hereby **SO ORDERED.**

**IT IS HEREBY FURTHER ORDERED** that this Court shall retain jurisdiction to enforce the terms of this Stipulation and Order.

DATED: December 13, 2004

_____

HON. DALE S. FISHER,
United States District Court Judge

STIPULATION OF SETTLEMENT AND ORDER THEREON

SCANNED

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release ("Agreement") is entered into this 18th day of May, 2004, by and among Plaintiff, Michael Zilles, on the one hand ("Zilles"), and Defendants, Michael Skellern ("Skellern"), Dennis Cole ("Cole"), Universal Guardian Corporation, a Nevada corporation ("UGC") and Universal Guardian Holdings, Inc., a Delaware corporation ("UGHO") on the other hand (collectively, "the UGC Group"). Zilles and the UGC Group are sometimes referred to hereafter as a "Party" or collectively as the "Parties".

## RECITALS

A.  On or about August 30, 2002, Zilles and The Harbour Group, a Virginia corporation ("THG") entered into an Acquisition Agreement with UGC, the essential terms of which provided that Zilles would sell, assign and convey one hundred percent (100%) of his ownership of 100% of the outstanding stock of THG in exchange for the issuance of One Million Seven Hundred Thousand (1,700,000) shares of common stock of UGC, the consummation of which caused THG to become a wholly owned subsidiary of UGC. Concomitant with the execution of the Acquisition Agreement, several Employment Agreements were executed between Zilles and both THG and UGC, by which Zilles became, *inter alia*, the President of THG;

B.  After the execution of the Acquisition Agreement, on or about December 2, 2002, UGC entered into a Share Exchange Agreement and Plan of Reorganization with UGHO, formerly known as HollywoodPartners.com, Inc. whereby all of the outstanding shares of UGC were exchanged for a certain number of shares in UGHO through a reorganization within the meaning of Section 368(a) of the Internal Revenue Code of 1986, as amended (the "Reverse Merger").

C.  After the execution of the Share Exchange Agreement and Plan of Reorganization, disputes and disagreements arose between Zilles and the UGC Group, resulting in, *inter alia*, the termination of Zilles' employment and business relationship with the UGC Group and the filing of the Complaint described below;

D.  On March 5, 2003, Zilles filed a complaint in the United States District Court for the Central District of California against Michael Skellern, Dennis Cole, Rick Fields, Universal Guardian Corporation and Universal Guardian Holdings, Inc. alleging violation of the Racketeer Influenced and Corruption Organizations Act, 18 U.S.C. Section 1961 *et seq.*, as well as other claims, including common law fraud, wrongful termination (the "Complaint"). The Complaint is presently pending before the U.S.D.C. and has been designated Case No. CV 03-8435 DSF (Cwx);

MVA.5.18.04                                                                                        - 1 -

E.  In response to the Complaint, all of the named Defendants filed motions to dismiss and/or strike the RICO claims and other causes of action. By order entered June 24, 2003, the Court, the Hon. Gary L. Taylor presiding, denied in part and granted in part said motions, and granted Zilles leave to file an amended Complaint. On or about July 24, 2003, Zilles filed a First Amended Complaint to which Defendants filed motions to dismiss and/or strike the RICO claims and other causes of action. By order dated September 10, 2003, the Court, the Hon. Gary L. Taylor presiding, granted Defendants' motions to strike the RICO counts with prejudice and allowed certain of the remaining claims for, *inter alia*, common law fraud, securities fraud, wrongful termination and other claims to proceed (the "Action");

F.  On November 6, 2003, all of the named Defendants with the exception of Rick Fields filed an Answer to the First Amended Complaint and, on even date, UGC filed a Counterclaim against Zilles for fraud in connection with the sale of THG to UGC, breach of fiduciary duty among other claims for relief arising out of the Acquisition Agreement as well as Zilles' operation and management of THG;

G.  After the pleadings were at issue, the Parties made the initial disclosures mandated by Rule 26(f) of the Federal Rules of Civil Procedure, followed by formal requests for the production of documents as well as the noticing of the depositions of Skellern and Fields. During the course of Skellern's deposition, the Parties held settlement discussions which formed the basis of this Agreement;

H.  The Parties now wish to settle their disputes and enter into a full and final disposition and settlement of their respective claims against each other, including any claims that may be asserted by Zilles against Rick Fields, without admitting or acknowledging liability and for the purpose of avoiding the further costs and uncertainty of litigation under the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, Zilles and the UGC Group hereby agree as follows:

1.  <u>Cash Payments to Zilles</u>.  On or before the close of business on May 19, 2004, Defendants shall personally deliver or caused to be delivered to Zilles, by and through his attorneys, a trust check from UGC's counsel or a cashier's check in the amount of Two Hundred Fifty-Five Thousand Dollars ($255,000.00). The check shall be made payable to the "Grossman & Klarfeld, Attorney-Client Trust Account".

2.  <u>Issuance of Stock to Zilles</u>. As and for additional consideration of this Agreement, UGHO shall cause to have issued and delivered to Zilles common stock of UGHO as follows:

MVA.5.18.04

- 2 -

A.  <u>Stock Grant</u>. On or before May 19, 2004, UGHO shall issue to Zilles Six Hundred Thousand (600,000) shares of registered, unrestricted, non-legend and freely tradable common stock of UGHO (the "Stock"). The Stock shall be personally delivered to Zilles' counsel, Grossman & Klarfeld on or before May 19 2004.

B.  <u>Representations and Warranties Regarding the Issuance of the Stock</u>. Zilles hereby represents and warrants that he has relied upon his own accounting, legal and financial advisors with respect to the acceptance of the Stock as consideration for this Agreement. Zilles and his professional advisor(s), if any, have been afforded an opportunity to conduct whatever due diligence they believe is warranted and have therefore obtained, in the judgement of Zilles and/or his professional advisor(s), sufficient information to evaluate the merits and risks of accepting the Stock as consideration for this Agreement. Zilles further hereby warrants and represents that he will ensure that the Stock will be liquidated in accordance with paragraph 2.C below.

C.  <u>Liquidation of the Stock</u>. Zilles agrees that the Stock will be liquidated as follows:

(i)    Zilles can sell One Hundred Thousand (100,000) shares of the Stock, or any such lesser amount(s) as he deems prudent in his sole and absolute discretion, on or after the date of delivery of the Stock as provided in paragraph 2.A above.

(ii)   Zilles can sell another One Hundred Thousand (100,000) shares of Stock, or any such lesser amount(s) as he deems prudent in his sole and absolute discretion at any point in time commencing June 19, 2004, and ending July 18, 2004.

(iii)  The balance of the Stock in the amount of Four Hundred Thousand (400,000) shares, may be sold by Zilles at the rate of Sixty-Five Hundred (6,500) shares per business day, or any such lesser per diem amount(s) as he deems prudent in his sole and absolute discretion, commencing July 19, 2004, and continuing each business day thereafter on a business daily basis until the balance of Stock is sold.

D.  <u>Liquidation Compliance</u>. Before any amount of the Stock is sold, Zilles shall issue written instructions to each and every brokerage firm he retains to sell the Stock, that the brokerage firm(s) cannot sell the Stock except in strict accordance with the liquidation schedule set forth in paragraph 2.C above. The UGC Group will have the right to audit (through, *inter alia*, production of sale confirmation slips and/or account statements) Zilles' compliance with the liquidation schedule set forth in

MVA.5.18.04                                                                                      - 3 -

paragraph 2.C above after the Stock has been liquidated.

E.   <u>Dismissal of the Actions</u>.  Upon the payment of funds as provided in paragraph 1 and the delivery of the Stock as provided in paragraph 2, Zilles agrees to dismiss with prejudice the entire Action against all defendants.  UGC will also dismiss with prejudice the Counterclaim filed against Zilles.  The dismissals shall be contained in a Stipulation for Dismissal which shall be executed simultaneous with the execution of this Agreement and delivered to counsel for the UGC Group for filing with the court.  Counsel for the UGC Group agrees that the Stipulation will not be filed until the payment set forth in paragraph 1 had cleared Zilles' counsel's account.  UGC's counsel shall provide Zilles' counsel with an endorsed copy of the stipulation so ordered by the court.

3.   <u>Mutual General Release</u>. Subject to the Parties' indemnification obligations set forth in paragraph 5 below and effective upon the payment of funds as provided in paragraph 1 and the delivery of the Stock as provided in paragraph 2, Zilles for himself and his spouse, and his past, present and future heirs, representatives, administrators, executors, agents, representatives, attorneys, partners, joint venturers, predecessors, successors, assigns, and each of them (individually and collectively, "Zilles' Related Persons") on the one hand, and the UGC Group for themselves and their respective past, present and future heirs, representatives, administrators, executors, agents, representatives, employees, agents, consultants, principals, attorneys, partners, joint venturers, officers, directors, shareholders, affiliates, subsidiaries, predecessors, successors, assigns, and each of them (individually and collectively, the "UGC Group's Related Persons") on the other hand, hereby fully and irrevocable release, acquit and discharge each other (including expressly and without limitation, Zilles' and Zilles' Related Persons' full and irrevocable release, acquittal and discharge of Rick Fields) from any and all Claims as defined in paragraph 3.2 below arising anywhere in the universe and occurring or existing at any time from the start of time until the execution and delivery of this Agreement by the Parties, including but not limited to, all Claims as defined in paragraph 3.2 below which the Parties and their respective Related Persons or any of them had, now have, or may hereafter claim to have against each other, that relate to the Acquisition Agreement, Zilles' employment with THG, UGC and/or UGHO, the Reverse Merger, the operation and/or management of THG, UGC and UGHO, the Action, the Counterclaim and/or any matters set forth in the Recitals including but not limited to, any fact, cause, matter or thing which was, or could have been stated, asserted, claimed or alleged in, or in connection with, the Acquisition Agreement, Zilles' employment with THG, UGC and/or UGHO, the Reverse Merger, the operation and/or management of THG, UGC and UGHO, the Action, the Counterclaim and/or any matters set forth in the Recitals.

3.1   <u>Unknown Claims</u>. The Parties understand that Section 1542 of the California Civil Code provides:

MVA.5.18.04                                                                                          - 4 -

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

In connection with the release set forth in this paragraph 3, each Party hereby expressly waives and relinquishes every present or future right or benefit he, they or it has, or may have, under Section 1542 of the California Civil Code and/or any similar law, statute, provision or policy to the fullest extent permitted by law. The matters referenced in paragraph 3 and paragraph 3.1 constitute the "Released Matters" under this Agreement. Notwithstanding anything herein to the contrary, the Released Matters under this Agreement shall not include any Claim as defined in paragraph 3.2 below that the UGC Group and/or the UGC Group's Related Persons have or may have against Rick Fields.

3.2    Claims Defined. For purposes of this Agreement, the term "Claim" means any fixed or contingent, matured or unmatured, liquidated or unliquidated, known or unknown, suspected or unsuspected, disclosed or undisclosed, anticipated or unanticipated claims, controversies, disputes, causes of actions, cross-claims, liabilities, rights, remedies, debts, rights of setoff, obligations, demands (including letter demands or notices), penalties, assessments, damages, requests, suits, lawsuits, expenses, costs (including attorney fees and expenses), actions, administrative proceedings, or orders, of whatever nature, kind, character, type or description, whether at law or in equity, and whether sounding in tort, intentional or negligent, contract, equity, nuisance, trespass, strict liability or any other statutory, regulatory, administrative or common law cause of action or source of law.

3.3    Covenant Not to Sue; Defense. Except as necessary to enforce this Agreement, Zilles and the UGC Group covenant, represent, and warrant that he or it will forever refrain from instituting, pursuing or in any way aiding or assisting in the filing or prosecution of any Claims released by this Agreement and/or the Released Matters and that this Agreement may be pleaded as a full and complete defense to any Claims which may be brought by or on behalf of Zilles and/or the UGC Group relating to any action, Claim, proceeding, right or demand released by this Agreement and/or the Released Matters.

3.4    Compromise. The Parties acknowledge that this Agreement constitutes a compromise to terminate a disputed claim.

3.5    No Admissions. Neither the execution nor delivery of this Agreement nor any statement contained in this Agreement shall express, imply or admit any liability, obligation, wrongdoing, whether by action or omission to act, by any of the parties.

MVA.5.18.04

- 5 -

## 4.    REPRESENTATIONS AND WARRANTIES.

4.1     Zilles' Representations & Warranties. Zilles warrants and represents to the UGC Group as follows:

4.1.1     Zilles has the full right and authority to enter into and consummate this Agreement; the execution, consent or acknowledgment of no other person or entity is necessary in order to validate the execution of this Agreement; and all proceedings required to be taken by or on behalf of Zilles to authorize him to make, deliver and carry out the terms of this Agreement have been duly and properly taken.

4.1.2     Entry into this Agreement, and the performance by Zilles of his obligations under this Agreement, does not contravene or constitute a breach of any agreement, contract or indenture to which Zilles is a party.

4.1.3     To the best of Zilles' knowledge, there are no other Claims which have been asserted or are being considered by any third parties to be asserted against the UGC Group relating to the Released Matters and Zilles has not assigned, transferred, pledged or encumbered any interest in any of the Released Matters to any person.

4.1.4     Except only for the filing of the Complaint, Zilles has not directly or indirectly, filed any charges or complaints or initiated any action against the UGC Group with any local, state or federal agency or court, nor has Zilles encouraged the filing of any Claim by any third person against the UGC Group with any local, state or federal agency or court.

4.2     The UGC Group's Representations & Warranties. The UGC Group warrant and represent to Zilles as follows:

4.2.1     Each member of the UGC Group has the full right and authority to enter into and consummate this Agreement; the execution, consent or acknowledgment of no other person or entity is necessary in order to validate the execution of this Agreement by each member of the UGC Group; and all proceedings required to be taken by or on behalf of each member of the UGC Group to authorize him or it to make, deliver and carry out the terms of this Agreement have been duly and properly taken.

4.2.2     Entry into this Agreement, and the performance by each member of the UGC Group of their respective obligations under this Agreement, does not contravene or constitute a breach of any agreement, contract or indenture to which each member of the UGC Group is a party.

MVA.5.18.04                                                                                  - 6 -

4.2.3    To the best of the UGC Group's knowledge, there are no other claims which may be asserted or are being considered by any third parties to be asserted against Zilles relating to the Released Matters and no member of the UGC Group has assigned, transferred, pledged or encumbered any interest in any of the Released Matters to any person.

4.2.4    Except for UGC's Counterclaim and the self disclosure may by the UGC Group to the Assistant to the General Counsel of the Department of the Navy under 48 CFR 203.7001(a)(6) and 48 CFR 201.7000(3), no member of the UGC Group has directly or indirectly, filed any charges or complaints or initiated any action against Zilles with any local, state or federal agency or court, nor has any member of the UGC Group encouraged the filing of any Claim by any third person against Zilles with any local, state or federal agency or court.

5.    <u>INDEMNIFICATION.</u>

A.    <u>Indemnification by UGC and UGHO</u>.  UGC and UGHO agrees to, and hereby does, fully indemnify, defend, save and hold Zilles harmless at all times from and against any Claims against Zilles or which Zilles may suffer arising out of, resulting from or in connection with: (A) any untruth or inaccuracy in any representation by the UGC Group hereunder; (B) any requirement of the UGC Group to indemnify which is expressly set forth in any provision contained herein; and/or (C) any breach of any warranty, condition, covenant or agreement of the UGC Group set forth in this Agreement.

B.    <u>Indemnification by Zilles</u>.  Zilles agrees to, and hereby does, fully indemnify, defend, save and hold the UGC Group harmless at all times from and against any Claims against the UGC Group  or which the UGC Group may suffer arising out of, resulting from or in connection with: (A) any untruth or inaccuracy in any representation by Zilles hereunder; (B) any requirement of Zilles to indemnify which is expressly set forth in any provision contained herein; and/or (C) any breach of any warranty, condition, covenant or agreement of Zilles as set forth in this Agreement.

C.    <u>Indemnification Procedure</u>.  For purposes hereof, (a) an "Indemnifying Party" means a party required hereunder to indemnify, defend, save and hold harmless another party herein from and against a particular Claim, and (b) an "Indemnified Party" means a party entitled hereunder to be indemnified, defended and held harmless from and against a particular Claim. Should any Claim arise as to which an Indemnified Party is entitled to indemnification hereunder, the Indemnified Party shall, as soon as practicable after its receipt of notice of the possibility of such Claim, but in no event later than thirty (30) days after its receipt of such notice, give the Indemnifying Party written notice (a "Claim Notice") of such possible Claim, setting forth in detail the basis and amount of such possible Claim. The Indemnified Party's failure to give, or its delay

MVA.5.18.04                                                                                            - 7 -

in giving, a timely Claim Notice shall not reduce or eliminate the indemnification obligation except
to the extent the Indemnifying Party is prejudiced by such failure or delay. Within thirty (30) days
(the "Objection Period") of the date a Claim Notice is deemed given under this Agreement, the
Indemnifying Party shall respond to such Claim Notice as follows: the Indemnifying Party shall
be entitled to cure any default which is capable of cure during the Objection Period, and the
amount of the Claim in question shall be reduced by the amount of the damages mitigated by such
cure. If the Indemnifying Party agrees within the Objection Period to defend the Indemnified
Party for such possible Claim, or does not object or respond thereto within the Objection Period,
the Indemnifying Party shall be deemed to have accepted its responsibility for indemnification of
such possible Claim hereunder. In such case, the Indemnifying Party shall immediately (i) defend
the Indemnified Party against such possible Claim with counsel of the Indemnifying Party's choice
(in its reasonable discretion) at the Indemnifying Party's expense, or (ii) settle or pay the amount
of such possible Claim, as the case may be. In any such defense or settlement of any possible
Claim, the Indemnified Party shall reasonably cooperate with and assist the Indemnifying Party.
Notwithstanding the foregoing, the Indemnified Party may not settle any possible Claim without
the Indemnifying Party's consent, provided that the Indemnifying Party provides the Indemnified
Party with reasonably satisfactory evidence that the Indemnifying Party will be able to defend
against and/or fully satisfy such possible Claim. If the Indemnifying Party does object to the
possible Claim within the Objection Period, the Indemnified Party and it shall attempt to resolve
the dispute within thirty (30) days of the Indemnified Party's receipt of such objection (the
"Settlement Period"). The notice of the Indemnifying Party to the Indemnified Party objecting to
such possible Claim shall set forth in reasonable detail the basis for such objection.

6.    GENERAL PROVISIONS.

6.1    Attorneys' Fees.

6.1.1    Each Party shall bear his or its own attorneys fees and costs in connection with the
Action, the Counterclaim as well as the preparation and consummation of this Agreement.

6.1.2    However, in any claim or action between the Parties involving this Agreement, the
prevailing party shall be entitled to recover from the other party, in addition to damages,
injunctive or other relief, if any, all costs and expenses (whether or not allowable as "cost"
items by law) reasonably incurred at, before and after trial or on appeal, or in any
bankruptcy proceeding, including without limitation, attorneys' fees, witness fees (expert
or otherwise), deposition costs, copying charges and other expenses.

6.2    Binding Effect. This Agreement shall be binding upon and inure to the benefit of
the Parties hereto and their successors and assigns.

MVA.5.18.04                                                                                    - 8 -

6.3    Entire Agreement, Amendments. This Agreement between Zilles and the UGC Group with respect to the matters contained herein and all prior or contemporaneous agreement or understanding, oral or written, pertaining to any such matters are merged herein and shall not be effective for any purpose. No provision of this Agreement may be amended or added to except by an agreement in writing which is signed by the Parties or their respective successors in interest and indicated that it is an amendment of this Agreement.

6.4    Headings. The headings in this Agreement are for purposes of reference only and shall not limit or define the meaning of the provisions of this Agreement.

6.5    Interpretation. This Agreement is made and entered into in the State of California and shall in all respects be interpreted, enforced and governed under the laws of the State of California. The language in all parts of this Agreement shall be in all cases construed as a whole according to their fair meaning and not strictly for or against either Zilles or the UGC Group. Any rule of contract interpretation to the effect that ambiguities or uncertainties are to be interpreted against the drafting party, or the party that caused it to exist, shall not be employed in the interpretation of this Agreement or any document executed in connection with the Agreement.

6.6    Severability.    If any term, provision, condition or covenant to this Agreement or its application to any party or circumstance shall be held, to any extent, invalid or unenforceable, then the remainder of this Agreement, or the application of such term, provision, condition or covenant to any party or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be effected and shall be valid and enforceable to the fullest extent permitted by law.

6.7    Survival.    Each of the covenants, agreement, representations, warranties and indemnifications contained in this Agreement shall survive the execution of this Agreement.

6.8    Further Assurances.    Each of the Parties to this Agreement shall execute and deliver any and all additional papers, documents or other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations under this Agreement and to carry out the intent and agreements of the parties to this Agreement.

6.9    Confidentiality.

6.9.1    Neither Party nor their respective Relates Persons shall cause or permit the payment mandated by paragraph 1 above to be disclosed to any person whatsoever subject to paragraph 6.9.2 below.

MVA.5.18.04

- 9 -

6.9.2    Notwithstanding the provisions of paragraph 6.9.1 above, each Party and its
Related Persons may disclose this Agreement: (i) to their attorneys and to the Court
as necessary to enforce the provisions of this Agreement; (ii) to their accountants,
and to the Internal Revenue Service and the Franchise Tax Board as necessary to
prepare for their federal and state tax returns; (iii) in accordance with the Parties'
respective disclosure obligation under state and federal securities law including,
without limitation, the Securities Exchange Act of 1933 and/or 1934; and (iv) to such
persons as required by law.

6.10    <u>Nondisparagement</u>.    The Parties agree not to intentionally disclose, publish, or
otherwise disseminate (or cause or permit to be disclosed, published or otherwise disseminated,
whether themselves or through one or more third parties), either orally or in writing, to any third
party, any information, thoughts, suppositions, opinions, or other statements or comments which
may be derogatory, disparaging or defamatory to the other in any manner whatsoever. The
Parties agree that damages from the violation of this provision would be difficult to ascertain and
therefore that, among other relief, injunctive relief is appropriate to enforce the terms hereof, in
addition to whatever other remedies the non-breaching party would be entitled to in the event of
breach.

6.11    <u>Notices</u>.    All notices, requests, demands and other communications given  or
required to be given hereunder shall be in writing and personally delivered or sent by United
States registered or certified mail, return receipt requested, or sent by a nationally recognized
courier service such as Federal Express, duly addressed to the Parties as follows:

| | |
|---|---|
| If to Zilles: | Richard A. Grossman, Esq. |
| | Grossman & Klarfeld, Inc. |
| | 2029 Century Park East, 21st Floor |
| | Los Angeles, California 90067-3007 |
| | Fax: 310.277.5732 |
| | |
| If to the UGC Group: | Mark V. Asdourian, Esq. |
| | Attorney & Counselor At Law |
| | A Professional Corporation |
| | 19800 MacArthur Blvd., Ste. 1425 |
| | Irvine, California 92612 |
| | Fax: 949.221.0019 |

Delivery of any notice or other communication hereunder shall be deemed made on the
date of actual delivery thereof to the address of the addressee, if personally delivered, and on the
dated indicated in the return receipt or courier's records as the date of delivery or as the date of
first attempted delivery to the address of the addressee, if sent by mail or courier service (such as

MVA.5.18.04                                                                                      - 10 -

- 17 -

Federal Express). Notice may also be given by telecopier to any party having a telecopier machine compatible with the telecopier machine of the party sending the notice. The transmittal confirmation receipt produced by the telecopier machine of the sending party shall be prima facie evidence of such receipt. Any party may change its address or telecopier number for purposes of this paragraph by giving notice to the other party. After transmittal of any notice via telecopier, a hard copy of the notice will also be sent via first class mail to the recipient.

6.11    Counsel. In executing this Agreement each of the Parties hereby specifically acknowledge that they have consulted with and have had the advice and counsel of attorneys of their own choice who is/are duly licensed to practice law in all the courts of the State of California and that they have executed this Agreement after independent investigation and without fraud, duress, coercion or undue influence.

6.12    Return of Discovery Documents. The Parties hereby agree that they will return to the producing party all documents obtained in connection with this action. The documents, shall be delivered within ten (10) days after the dismissal of this action as provided for in paragraph 2.D above. In addition, Zilles shall deliver to the UGC Group all transcripts and video tapes of the deposition of Michael Skellern. The Parties further agree that all such documents, transcripts and video tapes returned, as well as any other writings and/or documents that are in a Party's possession which relate to this action and/or the Release Matters, shall not be disseminated to any third party, person or entity unless required court order or upon the issuance and service of a subpoena, in which cases the Party being ordered to produce shall provide the other Party to this Agreement with written notice of the court order and/or subpoena at least ten (10) days in advance of the ordered production date.

6.13    Execution and Counterparts. This Agreement may be executed via facsimile in any number of counterparts, each of which shall be an original, but all of which shall, together, constitute one and the same instrument.

**[SIGNATURES ON THE FOLLOWING PAGE]**

MVA.5.18.04                                                                    - 11 -

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date and year first written above.

UNIVERSAL GUARDIAN CORPORATION,
A Nevada Corporation

By:_____
        Michael Skellern,
        President

UNIVERSAL GUARDIAN HOLDINGS, INC.
A Delaware Corporation

By:_____
        Michael Skellern,
        President

MICHAEL SKELLERN, individually

By:_____
        Michael Skellern

DENNIS COLE, individually

By:_____
        Dennis Cole

MICHAEL ZILLES, individually

By:_____
        Michael Zilles

MVA.5.18.04                                                           - 12 -

**CONSENT OF SPOUSE**

     I acknowledge that I have read the foregoing Settlement Agreement and Mutual General Release (the "Agreement") by and among Michael Zilles, and Michael Skellern, Dennis Cole, Universal Guardian Corporation, a Nevada corporation ("UGC") and Universal Guardian Holdings, Inc., a Delaware corporation ("UGHO"), that I know its contents and that I consent thereto and agree to be bound by its terms. Without limitation on the foregoing, I hereby acknowledge, and agree to, the terms and scope of the release being granted by my spouse, Michael Zilles, on behalf of himself, myself and various other parties pursuant to paragraph 3 of the Agreement; I hereby directly grant such release pursuant to such paragraph 3 on my own behalf as well. I am aware that by the provisions of the Agreement, my spouse, Michael Zilles, agrees to release any claim(s) he may have to any common stock in UGC and to any claim(s) to in excess of Six Hundred Thousand (600,000) shares of UGHO common stock, including my community property interest in either or both UGC and UGHO (if any).

     Dated: May 18, 2004

-----------------------------------------

MVA.5.18.04

- 13 -

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date and year first written above.

UNIVERSAL GUARDIAN CORPORATION,
A Nevada Corporation

UNIVERSAL GUARDIAN HOLDINGS, INC.
A Delaware Corporation

By:_____
     Michael Skellern,
     President

By:_____
     Michael Skellern,
     President

MICHAEL SKELLERN, individually

DENNIS COLE, individually

By:_____
     Michael Skellern

By:_____
     Dennis Cole

MICHAEL ZILLES, individually

By:_____
     Michael Zilles

MVA.5.18.04

- 10 -

## CONSENT OF SPOUSE

I acknowledge that I have read the foregoing Settlement Agreement and Mutual General Release (the "Agreement") by and among Michael Zilles, and Michael Skellern, Dennis Cole, Universal Guardian Corporation, a Nevada corporation ("UGC") and Universal Guardian Holdings, Inc., a Delaware corporation ("UGHO"), that I know its contents and that I consent thereto and agree to be bound by its terms. Without limitation on the foregoing, I hereby acknowledge, and agree to, the terms and scope of the release being granted by my spouse, Michael Zilles, on behalf of himself, myself and various other parties pursuant to paragraph 3 of the Agreement; I hereby directly grant such release pursuant to such paragraph 3 on my own behalf as well. I am aware that by the provisions of the Agreement, my spouse, Michael Zilles, agrees to release any claim(s) he may have to any common stock in UGC and to any claim(s) to in excess of Six Hundred Thousand (600,000) shares of UGHO common stock, including my community property interest in either or both UGC and UGHO (if any).

Dated: May 17, 2004

*Linda A. Zilles*

MVA.5.18.04

- 11 -

SCANNED

## MICHAEL J. ZILLES
## 20852 Trinity Square
## Potomac Falls, VA. 20165

December 3, 2004

STALT, Inc.
848 Tanager St., Ste. N
Incline Village, Nevada 89451
Attn. Bill Senner

     Re:   <u>Cancellation of Certificate No. 2281 for 600,000 common shares</u>
            <u>of Universal Guardian Holdings, Inc: By FED EX Delivery</u>

Dear Mr. Senner:

    Let this letter constitute my request and instruction that you cancel Certificate No.
2281 issued in my name for 600,000 shares of common stock of Universal Guardian
Holdings, Inc. and return said 600,000 shares of common stock to treasury.

    Thank you for your attention in this regard.

                 Very truly yours,

                 Michael J. Zilles [MEDALLION GUARANTEED]

Cc:

    Richard A. Grossman, Esq
    Mark V. Asdourian, Esq.
    Mark Y. Abdou, Esq.



SCANNED

**EXHIBIT C**

# MICHAEL J. ZILLES
## 20852 Trinity Square
### Potomac Falls, Virginia  20165

December 3, 2004

STALT, Inc.
848 Tanager St., Ste. N
Incline Village, Nevada 89451
Attn. Bill Senner

Re:     Issuer: Universal Guardian Holdings, Inc.
        4695 MacArthur Court, Suite 300
        Newport Beach, California, 92660

        Proposed Sale of  620,000 common shares (the "Shares") of  Issuer
        under SEC Rule 144(k) ["Rule 144(k)"]

Dear Mr. Senner:

        I propose to sell 620,000 shares of common stock of the Issuer in accordance with the requirements of Rule 144(k).  In this connection, I represent and warrant to you as follows:

1.      I am not currently an affiliate of the Issuer and have not been an affiliate of the Issuer for a period of three months prior to the proposed sale under Rule 144(k).

2.      Based in part upon information furnished by the Issuer, the Shares are fully paid and a minimum of two years have elapsed since the date that the Shares were acquired from the Issuer or an affiliate thereof as described in Rule 144(k).

        I am familiar with Rule 144(k) and agree that, in connection with the matters above, you and your counsel are relying upon the statements made herein.  The Issuer's counsel may also rely upon such statements as if this letter were addressed to them.

                                Very truly yours,

                                Michael J. Zilles [MEDALLION GUARANTEED]

Cc:     Richard A. Grossman, Esq.
        Mark V. Asdourian, Esq
        Mark Y. Abdou, Esq.

- 24 -

SCANNED

**RICHARDSON & PATEL LLP**

10900 WILSHIRE BOULEVARD
SUITE 500
LOS ANGELES, CALIFORNIA 90024-6525
TELEPHONE (310) 208-1182
TELECOPIER (310) 208-1154

SCANNED

December 20, 2004

**BY FACSIMILE**

STALT, Inc.
848 Tanager Street, Suite N
Incline Village, Nevada 89451
Attention: Mr. Bill Senner

Re:  Universal Guardian Holdings, Inc. / Michael J. Zilles
     Legal Opinion re 144(k) / 620,000 shares of common stock

Dear Mr. Senner:

We are counsel to Universal Guardian Holdings, Inc., a Delaware corporation (the "Company"). Reference is made to 620,000 shares of common stock (the "Shares") of the Company to be issued (the "Certificate") and registered in the name of Michael J. Zilles (the "Shareholder"). The Shareholder has requested our legal opinion with respect to the removal of the restrictive legend pursuant to Rule 144(k) promulgated Securities Act of 1933 (the "Securities Act") from the Certificate.

In order to express our opinion whether the sale of the legend meets the requirements under Rule 144(k), we have relied upon and reviewed: (1) the representation letter from the Shareholder, dated December 3, 2004, stating that the Shares were acquired and paid for in full by the Shareholder more than two years ago, and the Shareholder is not an "affiliate" within the meaning of Rule 144(a)(1) under the Securities Act, and has not been an affiliate within the preceding three months, and (2) a copy of the Certificate, which was issued as a replacement to certificate number 2033, with an effective date of December 19, 2002, registered in the name of Shareholder, which has been returned to the Company's treasury.

In rendering our opinion, we have assumed the genuineness of all signatures and the accuracy, truthfulness and authenticity of all documents. Based upon the foregoing, it is our opinion that you may remove the restrictive legend relating to the 620,000 Shares registered in the name of Shareholder and represented by the Certificate.

- 25 -

STALT, Inc.
December 20, 2004
Page 2

Please feel free to call me with any questions at (310) 208-1182.

Very truly yours,

**RICHARDSON & PATEL LLP**

Richardson Patel LLP

cc:    Mark V. Asdourian, Esq.
        Richard A. Grossman, Esq.

ma/jp/N/P

# PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             )  ss.
COUNTY OF LOS ANGELES )

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2029 Century Park East, Suite 2100, Los Angeles, California 90067-3007.

On December 10, 2004, I served the foregoing document described as **STIPULATION OF SETTLEMENT AND ORDER THEREON** on interested parties in this action, by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

Mark V. Asdourian, Esq.
MARK V. ASDOURIAN, APC
4695 MacArthur Court, Suite 300
Newport Beach, CA 92660-8858

**(By Mail)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, CA in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation or postage meter date is more than one day after date of deposit for mailing in affidavit.

**(Federal)** I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on December 10, 2004, at Los Angeles, California.

L. KAMBA

STIPULATION OF SETTLEMENT AND ORDER THEREON